# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6536 | **DATE** | 10/8/2003 |
| **CASE TITLE** | Waite vs. Board of Trustees of Illinois | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   For the reasons set forth on the attached Memorandum Opinion and Order, City Colleges' motion for summary judgment is denied as to the claims arising out of Waite's suspension and granted as to her discharge claims (15-1). The date for filing the pretrial order is extended to 11/14/03, but the case remains set for trial on 1/5/04 at 9:45 a.m. The case is set for a status hearing on 10/20/03 at 9:30 a.m. to discuss the possibility of settlement.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 15 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | 29 |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | 03 OCT 14 AM 11:2 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAULETTE WAITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 02 C 6536 |
| | ) |
| BOARD OF TRUSTEES OF ILLINOIS | ) |
| COMMUNITY COLLEGE DISTRICT, | ) |
| NO. 508 a/k/a CITY COLLEGES OF | ) |
| CHICAGO, | ) |
| | ) |
| Defendant. | ) |

DOCKETED
OCT 1 5 2003

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Paulette Waite has sued the City Colleges of Chicago under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 623(a) & 626(b), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-3(a) & 2000e-5. She alleges that City Colleges, her former employer, suspended and later fired her because of her national origin, Jamaican, and her age, 52 years old at the time of her termination. She further alleges that City Colleges fired her in retaliation for a charge of discrimination that she filed after she was suspended. City Colleges now moves for summary judgment. For the reasons stated below, the Court grants the motion in part and denies it in part.

Waite worked for City Colleges from 1997 through 2002 as the District Coordinator for its Child Development Centers. Her responsibilities included coordinating and consolidating

budgets for state and federal programs such as the Illinois State Board of Education (ISBE) Food Program and Head Start. Pl's 56.1 Resp., ¶¶ 29, 32. She was also required to act as a liaison with the Colleges' legal department and grants department to insure that all contracts were reviewed and submitted on time. *Id.*

On August 30, 2001, Waite's supervisor, Cynthia Armster, initiated a disciplinary proceeding against Waite based on her failure to meet her deadline to complete an Illinois Department of Human Services (IDHS) contract renewal application. After a hearing, Waite was suspended from work for 30 days without pay. On November 29, 2001, Waite filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging that City Colleges' decision to suspend her was motivated by her age, 52, and her national origin, Jamaican.

On January 25, 2002, Armster initiated a second disciplinary proceeding against Waite, this time alleging that she had failed to prepare IDHS "in-kind" reports and failed to conduct food reviews at certain campus sites despite "several directives" to do so. Based largely on Armster's testimony at a February 16 hearing, Ramona Shaw, the hearing officer assigned the case, recommended Waite's termination. Def's App. 15 (Pl's Ex. 20). The Colleges' Board of Trustees approved Waite's termination on March 7, 2002.

On September 13, 2002, Waite filed suit in this Court against City Colleges, alleging age and national origin discrimination and retaliation for making a charge of discrimination. She alleges that her age and national origin were motivating factors in her suspension and termination, and that her termination was motivated by retaliation for the EEOC charge she filed after her suspension. City Colleges has moved for summary judgment.

2

**Discussion**

Under Rule 56(c), a court may grant summary judgment only if there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is considered "genuine" if a reasonable trier of fact could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether or not a genuine issue of material fact exists, we must view the facts in a light favorable to Waite, the non-moving party in this case, drawing all inferences in her favor. *Celotex*, 477 U.S. at 322.

Because Waite offers no direct evidence of discrimination or retaliation, she must prove her case through the indirect, *McDonnell Douglas* burden shifting method. She must first make out a prima facie case, the required elements of which are basically the same for age, national origin and retaliation claims. *See Mateu-Anderson v. School District of Whitefish Bay*, 304 F.3d 618, 625-26 (7th Cir. 2002) (national origin), *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 644 (7th Cir. 2002) (retaliation); *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 886 (7th Cir. 2001) (age). Waite must show that she (1) is a member of a protected class, (2) was performing her job up to her employer's legitimate expectations, and (3) suffered an adverse employment action, and (4) that similarly situated employees were treated more favorably. *Gordon*, 246 F.3d at 886. Once Waite has made this showing, the burden shifts to City Colleges to provide a legitimate non-discriminatory reason for its actions. *Id.* Waite must then show that City Colleges' non-discriminatory explanation lacks credence. *Id.*

As to each of Waite's claims, City Colleges concedes that Waite is within a protected class (she is Jamaican, was older than 40 when she was suspended and fired, and engaged in protected activity by filing her EEOC charge) and was subject to adverse employment action. It

3

argues, however, that Waite was not meeting its legitimate expectations at the time she was suspended and fired, and that she cannot identify similarly situated employees who were treated more favorably. City Colleges further argues that Waite cannot show that its explanations for the disciplinary measures taken against her are pretextual. We first address these issues as they relate to Waite's claim that her suspension was motivated by her age and national origin.

1.  Suspension

    a.  Similarly Situated Employees

Identifying similarly situated employees in a disciplinary setting requires a plaintiff to identify another employee who dealt with the same supervisor, was subject to the same workplace rules, and engaged in similar conduct, but nonetheless received disparate treatment for no apparent legitimate reason. *Adams v. Wal-Mart Stores Inc.*, 324 F.3d 935, 940 (7th Cir. 2003). Waite argues that Tanya Woods, the person who replaced her as District Coordinator of Child Development Programs, is such an employee. She argues that Woods, who is outside Waite's protected class as to each of her claims–she is 34, African-American (not Jamaican), and has never complained of employment discrimination to the EEOC–made some of the same mistakes as District Coordinator that prompted City Colleges to suspend Waite in September 2001. Specifically, Waite points to evidence indicating that Woods failed to submit the 2003 IDHS contract renewal application until October 9, 2002, months after Waite was able to submit the 2002 version of that application the year before, and that City Colleges experienced a delay in funding as a result. Def's 56.1 Reply, ¶¶ 267, 269. And evidence indicates that Cynthia Armster, who supervised Woods and Waite, did not take disciplinary action against Woods, even though she believed that the delay in funding was a serious matter. *Id.*, ¶ 270-71.

This evidence is sufficient to raise a genuine issue as to whether Woods and Waite were similarly situated employees. The Court acknowledges City Colleges' contention that Woods and Waite are not truly comparable, as Woods was inexperienced when she delayed submitting the 2003 contract, and because Waite left the 2002 contract uncompleted while she took a vacation to Jamaica. But there are enough similarities between Woods' and Waite's responsibilities and conduct that their shared supervisor's failure to discipline them similarly arguably gives rise to an inference of discrimination.

b. Legitimate Expectations and Pretext

The requirement that Waite show that she was meeting City Colleges' legitimate expectation at the time of her suspension essentially overlaps with her responsibility to rebut City Colleges' explanation for why it suspended her. City Colleges maintains that Waite was suspended for inadequately performing her duties as District Coordinator, specifically, for missing the deadline to submit an IDHS Child Development grant proposal. Both to make out her prima facie case and to show pretext, Waite must point to some evidence suggesting that her actions in submitting the grant proposal were not the real reason she was suspended. *See Denisi v. Dominick's Finer Foods, Inc.*, 99 F.3d 860, 864 (7th Cir. 1996) ("Here, as in many employment discrimination cases, the second element of the prima facie case, satisfactory job performance, and the issue of pretext focus on the same circumstances because the employer maintains that the discharge was based on its reasonable belief that the employee was not performing in acceptable manner."). Accordingly, we address the two issues together.

Prior to her suspension, Waite received a letter from her supervisor, Cynthia Armster, stating that a pre-disciplinary hearing had been scheduled for the purpose of determining whether

5

"[Waite] should be disciplined up to and including termination." Def's App. 15 (Pl's Ex. 64). It further stated: "[t]he pre-disciplinary meeting concerns charges that you failed to perform your duties with the renewal of the annual IDHS contract by missing the contract deadline of June 18, 2001. As a result of your actions the City Colleges of Chicago was positioned to lose over **$500,000** in grant funding." *Id.* (emphasis in original). After the hearing, Waite received notice that she had been suspended without pay for 30 days beginning October 5, 2001. Def's App. 15 (Pl's Ex. 89). Like the pre-disciplinary notice, the letter outlining the reasons for her suspension emphasized that her failure to meet the deadline for submitting the IDHS contract "put City Colleges in the jeopardy of losing our funding of $500, 000." *Id.* It stated further: "[a]t the meeting you acknowledged that you had not submitted the grant proposal and offered no acceptable explanation for blatantly disregarding the June 18, 2001 deadline. ... the Chancellor has recommended you be suspended without pay for 30 days for the period of October 5, 2001-November 3, 2001."

Waite does not dispute that she failed to submit the IDHS contract prior to the June 18, 2001 deadline. She argues, however, that her failure to make that deadline never put City Colleges at risk of losing funding, that Armster knew it, and that Armster exaggerated the consequences of Waite's conduct as a pretext for discrimination. In other words, Waite argues, she was not actually suspended for failing to meet her employer's expectations, but rather, her supervisor manufactured grounds for discipline by overstating her mistakes. In support of her argument, Waite points to Armster's deposition, in which she admitted that City Colleges was not in jeopardy of losing its funding at least as long as it was able to submit the contract by an extended August deadline. Def's App. 3 (Armster Dep.) at 189. This is arguably an admission

6

that Armster exaggerated the consequences of Waite's conduct when she recommended the disciplinary hearing. And it is clear not only from the pre-disciplinary notice and notice of suspension, but also the disciplinary hearing officer's findings, Def's App. 15 (Pl's Ex. 66), that Armster's testimony as to the threat of losing IDHS funding played a central role in City Colleges' decision to suspend Waite. The possibility that Armster exaggerated the charges and evidence that led to Waite's suspension certainly does not prove that the suspension was discriminatory. But drawing reasonable inferences in Waite's favor as we must, and considering the evidence that Tanya Woods missed the 2003 IDHS contract deadline and was not disciplined in any way, there exists a genuine issue of fact as to City Colleges' reasons for suspending Waite. As to the suspension, therefore, summary judgment is denied.

2.  Termination

Waite claims that City Colleges' March 7, 2002 decision to terminate her employment was based on age and national origin. She further alleges that she was terminated in retaliation for the EEOC claim she filed in response to her suspension. As with the claims based on her suspension, Waite offers no direct evidence of discriminatory intent, and thus she relies on the burden-shifting method of proof. City Colleges again argues that Waite has failed to raise a genuine issue as to the second and fourth elements of her prima facie case: that she was performing up to its legitimate expectations, and that she was treated less favorably than other similarly situated employees. It argues that Waite was fired for insubordinate behavior, inattention to her duties and failure to follow through with her work, and that she has failed to provide evidence that any of these reasons are pretexts for discrimination.

The Court agrees with City Colleges that Waite has failed to raise a genuine factual issue

7

as to her termination claims. Specifically, assuming that she has established a prima facie case of age and national origin discrimination and retaliation, the Court agrees that Waite has failed to show that a genuine factual issue exists on the question of pretext.

City Colleges asserts that it fired Waite because she failed to perform her job duties in a responsible manner. Specifically, it points to a series of events leading up to her termination as evidence that she was unresponsive and insubordinate to her supervisor, Armster, and that she failed to follow through with her work. Def's App. 15 (Pl's Ex. 20). The disciplinary hearing officer's report recommending Waite's termination recounts two episodes as evidence of Waite's problematic behavior: one involving the submission of so-called "in-kind" reports to the IDHS as part of City Colleges' grant agreement with the State, the other involving "food reviews" that Waite was asked to conduct at various City Colleges campus sites. *Id.*

The hearing officer (the same one who had considered Waite's suspension) determined that Waite failed to comply with Armster's requests that Waite supervise and assist clerical staff that had been assigned to complete an in-kind report due January 11, 2002. Def's App. 15 (Pl's Ex. 20) at 641-42. According to Armster, Shaw reported, Waite provided no supervision to the clerical staff and provided them with confusing information regarding statistical formulas necessary to compile the report. *Id.* at 642. The clerical staff filled out the report, but, according to Armster, the numbers reported were incorrect and needed to be recalculated from scratch. *Id.* Further, Shaw reported, Armster testified at the hearing that Waite refused on January 10 to help make corrections to the report then due the next day. *Id.* As a consequence of Waite's behavior, which Shaw characterized as a lack of leadership, the report was not submitted on time, and City Colleges was placed in violation of its IDHS grant agreement.

Waite does not dispute the critical facts related to the in-kind report episode. She admits, for example, that when Armster asked her to help make corrections to the report on January 10, she "told [Armster] no" because she had to work on another project. *Id.*; Def's App. 2 (Waite Dep.) at 63. Though Waite contends that she later helped her clerical staff finish the report, she does not deny that the report was submitted late and that City Colleges was caused to violate its grant agreement. Pl's 56.1 Resp., ¶¶ 146, 151. More importantly, for purposes of her discrimination claims, Waite does not offer evidence from which a reasonable jury could find that the in-kind report episode was not a true basis for her termination.

A plaintiff in a Title VII or ADEA case can demonstrate pretext by showing that an employer's stated reasons for its actions are factually baseless, did not actually motivate the employer, or were insufficient to motivate the employer to act as it did. *See O'Neal v. City of New Albany*, 293 F.3d 998, 1005 (7th Cir. 2002). Waite contends that the charges against her were factually baseless by attempting to shift the blame for the in-kind report incident to third parties, including City Colleges' accounting department, and to her own clerical staff. But Waite raised those arguments during her disciplinary hearing, and this provided the hearing officer, Ramona Shaw, with additional reasons to recommend her termination. *See* Def's App. 15 (Pl's Ex. 20) at 643. Shaw's report indicates that Waite denied responsibility for the in-kind report, stating that she assigned the work to her staff. *Id.* Shaw concluded, however, that Waite did not review her subordinates' work, and Shaw decided that Waite's failure to do so demonstrated inattention to her duties as District Coordinator of Child Programs. *Id.* Moreover, Waite has admitted that she was ultimately responsible for monitoring "in-kind contribution documentation." Pl's 56.1 Resp., ¶ 29.

The second episode recounted in Shaw's report as grounds for Waite's termination involved her responsibility to conduct so-called "food reviews." The report indicates that Armster asked Waite to bring two staff members, Audrey Jackson and Antoinette Leavy, along with her on required ISBE food program reviews so that they could learn to conduct the reviews themselves. Def's App 15 (Pl's Ex. 20) at 643. The report states that Armster requested this type of on-site training for Leavy and Jackson because classroom-type training had not prepared the two sufficiently to perform food reviews on their own. *Id.* According to the report, however, Waite failed to schedule food reviews in a timely manner and ultimately scheduled more classroom training for Jackson. *Id.* at 643-644. Based on these facts, Shaw concluded that Waite was unresponsive and insubordinate. *Id.*

Though Waite disputes some of the details of Armster's account of the food review episode, she does not deny that she failed to follow Armster's directions. She responds instead by arguing that it was not her job to conduct food reviews. Not only is this belied by her admission that conducting food reviews was one of her responsibilities as District Coordinator, Pl's 56.1 Resp., ¶ 29, 32, but it misses the point. The reason offered for Waite's termination in connection with the food reviews was her failure to follow her supervisor's directions in a timely manner. And even though, as Waite argues, she apparently managed to schedule on-site food review training for Jackson at a later time, Jackson could not attend the meeting, and the training never took place. Def's App. 15 (Pl's Ex. 158). In any event, Waite simply simply provides no basis upon which a reasonable jury could doubt the veracity of City Colleges' account of the food review incident or its assessment that Waite was unresponsive and insubordinate to her supervisor.

10

Nor has Waite provided any evidence from which a fact finder might infer pretext. To support of her national origin claim Waite points to Armster's admission that she once accused Waite of having a "plantation mentality." Pl's 56.1 Reply, ¶ 280.[1] Though the intended meaning of that accusation is somewhat ambiguous, Waite contends that the term is used by African-Americans to refer to Caribbean people, especially Jamaicans, and that she understands it to mean that Jamaican people "behave like Caucasians and treat African-Americans like slaves." Pl's 56.1 Resp., ¶ 283. Even allowing for that interpretation, however, Waite has provided no evidence of a connection, temporal or otherwise, between Armster's use of that term and her decision to refer Waite for disciplinary proceedings. *See Fuka v. Thomson Consumer Electronics*, 82 F.3d 1397, 1403 (7th Cir. 1996) ("stray" remarks are not direct circumstantial evidence of discrimination unless related to employment decision in question). And while such remarks can be probative of pretext, *see Huff v. Uarco, Inc.*, 122 F.3d 374, 385 (7th Cir. 1997), Armster's comment alone does not raise a genuine issue as to whether City Colleges' otherwise legitimate and substantiated reasons for terminating Waite lack credence. *Id.*

Finally, though the issue is not raised by Waite, it could be suggested that her suspension played some part in City Colleges' decision to terminate her employment. We have concluded that there exists a genuine issue of fact as to whether Waite's suspension was discriminatory. This might be (but is not) argued to provide a basis to say that the termination was, in turn, premised upon an earlier, discriminatory employment decision. But the suspension does not appear to have been a material consideration motivating Waite's termination. Rather, the

---

[1] Waite specifically disavows any contention that this constitutes direct evidence of discrimination but argues that it may be used to assess whether City Colleges stated reasons for acting were pretextual. Pl's SJ Mem. at 12.

11

suspension is referenced only at the end of Shaw's termination recommendation, as evidence to rebut Waite's assertion that her work was commended by a previous supervisor as "excellent." Def's App. 15 (Pl's Ex. 20) at 645. And though the themes of Waite's suspension and termination are similar in sense that she was charged with inattention to her work and a failure to meet deadlines, the two decisions were premised upon distinctly different factual circumstances. Though Waite seems to suggest that her suspension and termination were part of a continuous stream of discrimination, there is no evidence to suggest that her termination was dependent on the possibly discriminatory events of her suspension.

## Conclusion

For the reasons stated above, City Colleges' motion for summary judgment is denied as to the claims arising out of Waite's suspension and granted as to her discharge claims. The date for filing the pretrial order is extended to November 14, 2003, but the case remains set for trial on January 5, 2004 at 9:45 a.m. The case is set for a status hearing on October 20, 2002 at 9:30 a.m. to discuss the possibility of settlement.

MATTHEW F. KENNELLY
United States District Judge

Date: October 8, 2003